**STATE of Minnesota, Respondent,**

v.

**Henry R. EGGERT, Appellant.**

No. C7–84–442.

Court of Appeals of Minnesota.

Nov. 20, 1984.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Douglas Peine, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from a judgment of conviction of eight counts of intrafamilial sexual abuse and first degree criminal sex-

ual conduct, from denial of a motion for a new trial, and from the sentence imposed. Appellant raises several issues concerning evidentiary rulings, the instructions to the jury, alleged prosecutorial misconduct in closing argument, and the length of the sentence imposed. We affirm.

## FACTS

Appellant Henry Eggert was charged with multiple counts of first degree intrafamilial sexual abuse, first degree criminal sexual conduct, and one count for attempt of each. Each alleged incident involved Eggert's niece, aged 4 to 7 years at the time of the offenses.

The sexual acts were claimed to have occurred at the home of Irene Howells, Eggert's mother and the victim's grandmother, during family gatherings at the home. The contact allegedly occurred in the "red room" upstairs, a bedroom and family room with beds and a TV set, where the victim took naps when she visited the house. Appellant lived in the house and was frequently present for family gatherings, although he presented evidence showing he was not present, or was present only briefly, on the dates alleged in the complaint.

After tying the child's memory of the incidents of abuse to family events, the state was able to specify the following dates for the incidents:

1) November, 1980 (about the time of a trip by the child and her grandmother to Guam);

2) July 21, 1981 (following family vacation in Brainerd);

3) April 11, 1982 (Easter); and

4) May 9, 1982 (Mother's Day) (this incident was charged as an attempt).

Appellant presented evidence of his absence from the home for each of these dates, as follows:

1) Eggert and his mother testified that there were no family gatherings at the home during November, 1980 (the family met once at a restaurant);

2) A friend of Eggert's stated that Eggert was with him most of the day, from nine in the morning until an unspecified hour; Eggert testified he did not return home until 11 p.m.;

3) Eggert's mother testified that he left the house at 11:30 a.m. and her guest list indicated he did not return (with his fiancee) until after dinner in the evening; and

4) His mother stated that Eggert stayed the previous night at his fiancee's and did not arrive until around 5:30 p.m., again with his fiancee.

The trial court instructed the jury that it was not necessary for the state to prove that the offenses were committed on these specific dates.

The victim was allowed to testify following an in-chambers examination as to competency. She testified to the acts of abuse using a general term for both male and female genitalia. After she had given a brief description of the abuse, using this term, the state introduced anatomically correct dolls to illustrate her testimony.

The evidence did show that the child had been abused by her father's stepbrother in February, 1979. This was a single incident, which the child immediately reported to her mother, who contacted the police. The step-uncle, a sixteen year old at the time, admitted his guilt and moved out of state. The contact with appellant allegedly began one month prior to this incident.

During closing argument, the prosecutor made a reference to the *Cermak* sexual abuse case:

"This is why incest is the hidden crime, look at the famous cases, the *Cermak* cases."

Appellant did not object to this reference at the time, nor assign it as grounds for a new trial in his post-conviction motion.

Appellant was sentenced to 70 months in prison, based on the *Hernandez* method. Appellant, who had no prior criminal history, was given criminal history points for convictions on the counts involving separate incidents. Thus, of the concurrent sentences, the longest carried a presumptive sentence range of 60 to 70 months.

## ISSUES

1. Did the trial court's instruction that it was not necessary to prove the precise dates on which sexual abuse occurred take appellant's rebuttal evidence from the jury?

2. Did the claimed harmful effect of use of anatomically correct dolls to illustrate the victim's testimony exceed its probative value?

3. Did the prosecution commit prejudicial misconduct by its reference in closing argument to the *Cermak* case?

4. Was the evidence sufficient to support the jury's verdicts of guilty?

5. Was appellant correctly sentenced to an executed sentence of 70 months?

## ANALYSIS

### I

*Jury instruction*

As appellant concedes, none of the crimes charged included, as an essential element to be proved, a precise day on which the offense occurred. Appellant, however, argues that the trial court's instruction that specific dates need not be proven took from the jury the factual issue raised by appellant's defense.

The jury was given the following instruction on the necessity of proof as to specific dates:

"You are instructed it is not necessary to prove the commission of a crime on a precise day or even year stated in the complaint.

If you find by proof beyond a reasonable doubt that the defendant has committed the acts complained of in any count, you may find him guilty even if you find the act or acts were committed at dates other than those charged in the complaint, so long as the act or acts were committed before the complaint was filed."

■ Appellant did not object to this instruction at trial. Therefore, we may consider his claim that the instruction requires reversal only if the instruction was "plain error affecting substantial rights," or an error in "fundamental law." *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983).

■ The supreme court has indicated that sexual abuse complaints should state specific time *periods* during which multiple acts of abuse allegedly occurred, but there is generally no requirement that specific dates be charged, or proven. *State v. Becker*, 351 N.W.2d 923, 927 (Minn.1984). Moreover, a precise date need not be alleged and proven simply because the date is made an essential element of the *defense* where the date is not an essential element of the crime charged. *State v. Waukazo*, 269 N.W.2d 373, 375 (Minn.1978) merely holds that there are cases in which the court may require more specificity of the complaint in order to allow the defendant to prepare a defense. It does not require specific dates for sexual abuse prosecutions.

■ The instruction correctly stated the law as to sexual abuse offenses, *see, Becker*, and did not improperly comment on appellant's "alibi" defense. *Cf., State v. Kluck*, 299 Minn. 161, 217 N.W.2d 202 (1974) (cautionary instruction that an alibi defense is "easily contrived and hard to disprove").

· ■ Appellant, however, argues that his theory of the case was negated by the instruction given. The giving of an instruction relieving the prosecution of proving commission of an offense on a specific date is not rendered erroneous simply by the defendant's presentation of an "alibi" defense. *State v. Danley*, 9 Wash.App. 354, 513 P.2d 96 (1973). In cases involving sexual offenses committed against young victims, courts have generally permitted such an instruction despite a defense that the defendant was elsewhere, or lacked the opportunity to commit the offense, on the date or at the time alleged. *See, State v. Siems*, 535 S.W.2d 261, 266 (Mo.App.1976);

*State v. Verdugo*, 109 Ariz. 391, 510 P.2d 37 (1973); *State v. Correia*, 106 R.I. 655, 262 A.2d 619 (1970).

■ An instruction may constitute plain error if, although correctly stating general law, it fails to fit contentions of the parties reasonably supported by competent evidence. *Malaski*, 330 N.W.2d at 453. In *Malaski*, the trial court gave an instruction on self defense which failed to reflect the defendant's contention that he had acted in self defense, but without intent to kill. The result was that the jury could have believed that these contentions were inconsistent.

The issue is whether the instruction may have misled the jury into *improperly* rejecting evidence of appellant's absence from the Howells home on the dates alleged. *Danley*, 9 Wash.App. at 356–57, 513 P.2d at 98. Here, we find no such impingement on appellant's defense. Appellant presented evidence of his absence from the Howells residence on the dates on which the State claimed that sexual abuse occurred. This evidence did not constitute a "defense," as such, but a direct rebuttal of the State's proof. Since the State committed itself to the four dates (or month, in one case) by the evidence it presented, the logical inference to be drawn from the verdict is that the jury chose to disbelieve appellant's evidence of absence, either in whole or in part.

If the jury had accepted appellant's evidence showing his absence from the home on the crucial dates, there is nothing in the court's instructions indicating an inference that the jury still could or should convict. Unlike *Malaski*, where the instructions undermined the defense by making it appear internally inconsistent, here appellant's rebuttal evidence went to the jury for whatever weight they chose to assign it. We do note the alibi defense only partially covered the dates alleged, allowing the jury to convict even if it believed some of appellant's evidence. *See, State v. Nelson*, 310 N.W.2d 777, 780 (S.D.1981).

## II

*Anatomical dolls*

Appellant contends that the use of anatomically correct dolls to illustrate the child's testimony was unnecessary and prejudicial, and that the pretrial preparation in use of the dolls was also prejudicial. The victim had just started her testimony, and had given a general description of the acts using a general term when the dolls were first used.

There are no Minnesota cases dealing with this exact issue. Courts in other jurisdictions have approved the use of such dolls to illustrate the testimony of child victims of sexual abuse. *See, e.g., State v. Jenkins,* 326 N.W.2d 67 (N.Dak.1982); *State v. Lee,* 9 Ohio App.3d 282, 459 N.E.2d 910 (1983); *Commonwealth v. Trenholm,* 14 Mass.App. 1038, 442 N.E.2d 745 (1982).

In general, the use of models and other types of illustrative evidence is within the discretion of the trial court. McCormick, *Law of Evidence,* § 213 (2d ed. 1972). There was no abuse of that discretion here. As the court stated in *Lee*:

> The trial court found that the young witness was aided by the models she used. The record indicates that the witness was unable to relate to the jury the events using the appropriate sexual or physiological terminology. The dolls were used to clarify the witness' explanation and to insure a common understanding between the witness and jury as to the events which took place.

9 Ohio App.3d at 284, 459 N.E.2d at 912. Appellant argues that the use of the dolls to demonstrate the victim's testimony was unnecessary because she was able to express her allegation in words, and cumulative because she was allowed to draw a picture of the alleged actions which were shown to the jury. Appellant's argument does not correctly state the true test of the use of testimonial aids. For instance, a doctor or engineer may be allowed to use artificial mockups of the human anatomy, cutaways, maps and diagrams, etc., even if the witness acknowledges that he does not *have* to have those things to testify. The test is whether or not the testimonial aid will likely assist the jury in understanding the witness's testimony. *See Timmerman v. March,* 199 Minn. 376, 381, 271 N.W. 697, 700 (1937).

Appellant's particular objections of unnecessary and cumulative were not raised at trial. Defense counsel did object to the victim's competency to testify. Even if we give appellant the benefit of the doubt and find that his timely objection to competency included by inference a timely objection to the use of the dolls as unnecessary and cumulative, we find no evidence that the trial court erred in allowing the use of the dolls. As to the victim's competency to testify, the court properly questioned her out of the jury's hearing. The trial court's decision as to the competence of youthful witnesses is discretionary, and the record doesn't support the contention that there was error.

Appellant additionally argued that allowing the victim pre-trial practice with the dolls was prejudicial. We find that contention without merit. The child had described the incidents to adults several times before there was any use of the dolls, not only to her parents but to the child psychologist and the pediatrician. There is no indication that the child's testimony was improperly reinforced by the use of the dolls at trial. It is accepted and ethical trial procedure for either side in a civil or criminal case to display to a potential witness a testimonial aid that he or she may be asked to use during the testimony.

## III

*Prejudicial misconduct*

Appellant contends that the prosecutor committed misconduct prejudicial to him when she referred to the *Cermak* case in closing argument. This reference was improper. *See Gullickson v. State,* 256 Wis. 407, 41 N.W.2d 291 (1950) (reference to a case of suspected child abduction in a rape trial). Appellant, however, did not object to the reference. The question before us

is, therefore, whether this single reference was so fundamentally unfair as to now constitute reversible error even though not objected to at trial.

■■■■ Appelant's failure to object is a factor to be considered in determining whether prejudicial misconduct has occurred. *State v. Caron,* 300 Minn. 123, 218 N.W.2d 197 (1974). If appellant had objected, a cautionary instruction by the court following the objection, together with the rebuttal argument offered by appellant, could have cured any prejudicial effect. *See State v. Fossen,* 282 N.W.2d 496 (Minn. 1979).

■■■ There are two standards for determining whether prosecutorial misconduct warrants a new trial or is merely harmless:

Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*State v. Caron,* 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974).

The *Cermak* reference may be read as a reference to the entire problem of sexual abuse of children, with the implication that the jury should assist society in taking a stand on this issue.

■■■ Introduction by the prosecutor of issues broader than the guilt or innocence of the accused is improper. *State v. Spaulding,* 296 N.W.2d 870, 876 (Minn. 1980). Such references, however, even if explicitly inviting the jury to make its verdict a statement on a broader issue, have not been held to be "unusually serious" prosecutorial misconduct requiring a showing of harmlessness "beyond a reasonable doubt." *See e.g., State v. Clark,* 291 Minn. 79, 189 N.W.2d 167 (1971) (invitation to solve problem of decline of "law and order"). In *State v. Gaulke,* 281 Minn. 327, 161 N.W.2d 662 (1968), the prosecutor's

challenge to jurors to protect children by convicting defendant of indecent assault upon his niece, was held not to be so prejudicial as to warrant a new trial.

■■■ We do not find the first *Caron* standard—"unusually serious prosecutorial misconduct"—present on these facts. Applying the second *Caron* standard to this case, it does not appear likely the *Cermak* reference, isolated as it was, played a substantial part in the jury's verdict. Appellant had the opportunity to rebut, and the jury was instructed to decide the case solely on the facts before it. If the jury had accepted appellant's alibi testimony in full, the single improper reference to *Cermak* logically should not have affected its verdict.

## IV

### Sufficiency of the evidence

■■■ Prosecution of sexual abuse of children often relies heavily on testimony by the children themselves. There is no requirement of corroborating evidence. Minn.Stat. § 609.347, subd. 1 (1982).

■■■ Appellant's evidence did not present a complete rebuttal of the State's proof for most of the dates specified. On three of the dates, appellant was present at the family home during part of the day. His friend testified that appellant arrived at his home around 9 a.m., on July 21, 1981, but appellant alone testified that he did not return to the family home until 11:30 that night. On both April 11, 1982, and May 9, 1982, appellant was at the family home either before noon or after evening dinner, or both. Appellant's evidence on the dates when he claimed total disassociation from the areas where the alleged acts were said to occur relied, in some instances, partially on his own unsupported testimony. The assessment of the relative credibility of appellant and the child was the critical factor in this case. The jury was entitled to believe or disbelieve appellant, either in whole or in part. Given the jury's right to assess the credibility of witnesses, there was evidence from which a jury could rea-

sonably find appellant guilty. *State v. Reichenberger*, 289 Minn. 75, 182 N.W.2d 692 (1970).

## V

### Sentencing

Appellant's concurrent sentencing, resulting in a 70 month sentence for one of the convictions, using a criminal history score including two of the other convictions, is in accord with the *Hernandez* method, as extended to cases in which all offenses charged are against the same victim; *State v. Hernandez*, 311 N.W.2d 478 (Minn.1981); *State v. Moore*, 340 N.W.2d 671 (Minn.1983). The sentence was at the high end of the presumptive range (60–70 months). Appellant argues that the sentence was harsh, and urges several mitigating factors.

The Supreme Court has declined to interfere with sentencing decisions involving no departure from the guidelines except in rare cases involving "compelling circumstances." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). We find no compelling grounds in this case.

We do not address the issue raised by the post-trial affidavit of the victim's grandmother, since we find no indication in the record that this evidentiary issue was presented to the court before or during trial. The post trial affidavit claimed knowledge on the part of the grandmother of physical and sexual abuse of the victim by others than appellant. The affidavit also claimed that the victim's mother had indicated a grudge against appellant, her brother. The post-trial affidavit was not cited as newly-discovered evidence in appellant's motion for a new trial, but rather as evidence claimed to have been presented to, and ruled inadmissible by, the trial court. The record does not support appellant's contention that the affidavit had been timely presented.

## DECISION

The instruction to the jury that the State need not prove commission of the offenses on the dates alleged was not plain error requiring a new trial. Use of anatomical dolls by the child during testimony was proper. The improper reference by the prosecution in closing argument did not constitute reversible error. There was evidence to support the jury's verdict, and no grounds exist for interfering with the trial court's sentence, which was within the guidelines' presumptive range.

Affirmed.