violates that person's right to due process of law. *Connally* v. *General Constr. Co.* (1926), 269 U.S. 385; *South Euclid* v. *Richardson* (1990), 49 Ohio St. 3d 147, 551 N.E. 2d 606.

In the case *sub judice,* appellants stipulated to ownership of registered American Staffordshire Terriers, a pit bull breed explictly banned by the ordinance. It is clear, then, that appellants had notice that their possession of these dogs was proscribed by the ordinance. One to whose conduct a law clearly applies does not have standing to challenge the law for vagueness. *Parker* v. *Levy* (1974), 417 U.S. 733.

Moreover, appellants' argument that the statute is vague as applied to owners of mixed-breed dogs and/or to those who do not possess knowledge that their dogs may be identified as a type of pit bull explicitly banned by the ordinance must likewise fail. "* * * A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 495. Appellants' second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., UTZ and GORMAN, JJ., concur.

THE STATE OF OHIO, APPELLEE, *v.* HART, APPELLANT.

(No. L-86-172—Decided August 26, 1988.)

*Chris Anderson,* assistant prosecuting attorney, for appellee.

*J. Boyd Binning,* for appellant Carlton James Hart, Jr.

*Per Curiam.* This cause is on appeal from a judgment of the Lucas County Court of Common Pleas.

Appellant was indicted on one count of gross sexual imposition involving Pam Chevalier on November 7, 1985. Subsequently, on December 12, 1985, appellant was indicted on a charge of three counts of gross sexual

imposition involving Marie Hammer with the specification that the victim was under thirteen years of age. At the time of the alleged incidents, Marie Hammer was a foster child living in appellant's home. These matters were consolidated prior to trial.

A jury trial was held on February 11 and 12, 1986. The jury returned verdicts convicting appellant of the three charges involving Marie Hammer and acquitting appellant of the one charge involving Pam Chevalier. Appellant filed a motion for new trial on March 25, 1986. Following a hearing, the motion was denied. Appellant was sentenced on April 14, 1986 to two years on each count with the sentences to be served concurrently.

From said judgment, appellant sets out the following five assignments of error:

"I. The trial court erred in overruling defendant's motion for production of records of the children services board without conducting any inquiry into the relevancy of such records, in violation of appellant's right under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

"II. The trial court erred in permitting Marie Hammer to illustrate her testimony with dolls, in violation of appellant's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

"III. The trial court erred in overruling appellant's motion for new trial on the basis of juror misconduct, in violation of appellant's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

"IV. The jury's verdict is against the manifest weight of the evidence.

"V. The defendant-appellant was denied his right to a fair trial pursuant to the Sixth and Fourteenth Amendment rights under the United States Constitution and Article I, § 10 and § 16, of the Ohio Constitution, as a result of his representation by ineffective counsel."

In his first assignment of error, appellant argues that the trial court erred in overruling appellant's motion for production of records of the Lucas County Children's Services Board ("CSB") regarding Marie Hammer. Appellant contends that to deny his motion based on the confidentiality of such records was a violation of his constitutional rights.

An evaluation of subsequent events indicates that appellant's first assignment of error is without merit. Prior to filing briefs with this court, appellant moved that the case be remanded to the trial court for two purposes. Appellant asked that the record be supplemented to reflect statements clarifying the trial court's ruling on appellant's pre-trial motion for production of documentary evidence and, also, whether the trial court conducted an *in-camera* inspection of said evidence. Appellant's motion for remand was found well-taken and granted by this court on January 7, 1987.

The judgment entry prepared in accordance with the remand indicates that, pursuant to appellant's pre-trial motion, the trial court required appellee to provide the court with the documentary evidence requested by appellant. The judgment entry also provides that the trial court conducted an *in-camera* inspection of the aforementioned documents and papers. Following this inspection, the trial court informed appellant's counsel that no exculpatory material was found. Further, the trial court indicated that the documents were then made available to appellant's counsel for his "perusal."

By permission of this court, both parties filed additional briefs following the entry of the trial court's judgment. In his supplemental argument, ap-

pellant would have this court consider items which are not a part of the record, including an unrecorded copy of an earlier judgment entry, along with recently prepared affidavits of appellant's former counsel. Appellant argues that the unrecorded entry of the trial court is inconsistent with the one filed on July 18, 1988, and further asserts that the records were never submitted to appellant's counsel for review. Additionally, appellant makes the unsupported contention that if such records were submitted to the court for inspection, defense counsel had the right to be present and to be shown CSB records of the pre-trial statements made by Marie Hammer.

It has been held numerous times that a court speaks only through its journal entries. *Economy Fire & Cas. Co.* v. *Craft General Contr., Inc.* (1982), 7 Ohio App. 3d 335, 7 OBR 432, 455 N.E. 2d 1037. In the case *sub judice,* the trial court expressly stated that it conducted an *in-camera* inspection and provided the documents to appellant's counsel. The possibility that an earlier draft of the judge's entry was submitted to counsel is irrelevant. The judgment entry filed by the court is controlling upon this court. Additionally, "[a] judge can change his mind before making a journal entry without giving the parties grounds for an appeal, because the court has not spoken until its journal entry is filed." (Citation omitted.) *Id.* at 337, 7 OBR at 434, 455 N.E. 2d at 1040.

Therefore, in the interests of proper disposition of the instant appeal, this court is compelled to accept the holding of the trial court filed in the form of a judgment entry on July 18, 1988.

Appellant asserts that he had the right to view the CSB records in order to ensure that he received a fair trial. This argument fails for several reasons. First, R.C. 5153.17 provides in relevant part:

"[The county children services board] records shall be confidential, but shall be open to inspection * * *, upon the written permission of the executive secretary."

However, it has been found that such records may nevertheless be discoverable and admissible in certain circumstances. Such a situation was found by the court in *Davis* v. *Trumbull Cty. Children Serv. Bd.* (1985), 24 Ohio App. 3d 180, 24 OBR 270, 493 N.E. 2d 1011. In *Davis*, the court held that "[a]n agency of the state may not seize a person's child and then be the sole judge at how much of the evidence in respect to the agency's conduct it will refuse to divulge." *Id.* at 184, 24 OBR at 275, 493 N.E. 2d at 1016.

The court further held that a " 'judicial evaluation' " was an appropriate screening of the " 'availability of the [asserted] privilege' " of confidentiality. (Citation omitted.) *Id.* The United States Supreme Court echoed this holding in *Pennsylvania* v. *Ritchie* (1987), 480 U.S. 39.

Records and statements made during the investigation or prosecution of a case are generally not subject to pretrial disclosure pursuant to Crim. R. 16. See, also, R.C. 2151.421. Appellant did not specify with particularity the documents requested or the need for their production, nor did he renew his request at trial, leaving this court to appraise serious gaps in appellant's proffered defense.

"An order granting or denying a motion *in limine* is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. Therefore, an appellate court need not review the propriety of such an order, unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at the trial." *State* v. *White* (1982), 6

Ohio App. 3d 1, 6 OBR 23, 451 N.E. 2d 533, paragraph two of the syllabus.

Finally, the record indicates that the requested records were not to be used for a particular aspect of the defense, but were slated to be used as an attack upon the general credibility of the victim. Such use of juvenile records has been precluded in situations similar to the case *sub judice*. See, *e.g., State* v. *Hale* (1969), 21 Ohio App. 2d 207, 50 O.O. 2d 340, 256 N.E. 2d 239, and *Corbett* v. *Bordenkircher* (C.A. 6, 1980), 615 F. 2d 722, 727.

For the aforestated reasons, appellant's first assignment of error is found not well-taken.

In his second assignment of error, appellant argues that the trial court erred in allowing eleven-year-old Marie Hammer to illustrate her testimony with dolls. Appellant argues that such testimony violated his constitutional rights under the Fifth, Sixth and Fourteenth Amendments.

The standard for ascertaining the appropriateness of demonstrative testimony was established in *Simes* v. *Dayton-Xenia Ry. Co.* (App. 1937), 24 Ohio Law Abs. 595, 598, 36 N.E. 2d 517, 520:

"The rule is that the court has wide discretion in determining whether or not a jury shall be permitted to observe an exhibition of mechanical devices or experiments."

That a child victim-witness may be allowed to communicate with a jury through the use of dolls was upheld by the court in *State* v. *Lee* (1983), 9 Ohio App. 3d 282, 9 OBR 497, 459 N.E. 2d 910. In *Lee,* the trial court found that the young witness (five years old) was assisted by using the models during her testimony. *Id.* at 283, 9 OBR at 498, 459 N.E. 2d at 912:

"The dolls were used to clarify the witness' explanation and to insure a common understanding between the witness and jury as to the events which

took place." *Id.* at 283, 9 OBR at 498-499, 459 N.E. 2d at 912.

The record in the case *sub judice* indicates that during her testimony, Marie used the dolls for an identical purpose.

Appellant's argument focuses on the difference in age between the victim in *Lee* and Marie. Appellant asserts that Marie was old enough to communicate without the use of dolls and, therefore, that the trial court should not have permitted their use. An analysis of this issue, according to *Lee, supra* and *Simes, supra,* focuses on the trial court's discretion and, in determining the appropriate examination of witnesses, conversely, its abuse:

" 'Judicial discretion is the option which a judge may exercise between the doing and not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case.' " (Citation omitted.) *Krupp* v. *Poor* (1970), 24 Ohio St. 2d 123, 127, 53 O.O. 2d 320, 322, 265 N.E. 2d 268, 271.

In order to establish that the trial court abused this wide grant of discretion, appellant must prove that the court's attitude was unreasonable, arbitrary or unconscionable. See *State* v. *Amison* (1965), 2 Ohio App. 2d 390, 393, 31 O.O. 2d 594, 596, 208 N.E. 2d 769, 771. No evidence of such unreasonableness was offered by appellant. In contrast, he asserts only that the witness' age should have been the sole factor used by the court in determining the appropriateness of the use of dolls. Appellant argues that the witness had no difficulty describing sexual physiology and that the dolls merely offered an opportunity for appellee to manipulate the witness. Appellant, however, fails to establish how

such a result was an abuse of judicial discretion.

An evaluation of the record indicates that it was plausible for the trial court to believe that Marie would be able to clarify her testimony through the use of dolls. Therefore, we find that it was not an abuse of discretion for the court to allow such testimony. The trial court properly exercised its discretion under the facts of this case. For the aforestated reasons, appellant's second assignment of error is not well-taken.

In his third assignment of error, appellant argues that the trial court erred in overruling a motion for new trial. Appellant's post-trial motion was based on an assertion of juror misconduct under Crim. R. 33, stemming from the consumption of alcoholic beverages during impanelment. A hearing was held following appellant's motion for new trial at which it was adduced that six of the twelve jurors had consumed alcoholic beverages during the lunch recess on either the first or second day of the two-day trial.

Consumption of alcohol by jurors, during a trial recess, has been held to constitute behaviour amounting to misconduct. See, e.g., State v. McKinney (1945), 77 Ohio App. 309, 44 Ohio Law Abs. 568, 33 O.O. 111, 64 N.E. 2d 129. However, while this court does not condone such activity, we do not find that appellant's motion for a new trial was improperly denied:

"A new trial may be granted for the misconduct of the jury where the substantial rights of the defendant have been materially affected." (Citations omitted.) State v. Hipkins (1982), 69 Ohio St. 2d 80, 83, 23 O.O. 3d 123, 125, 430 N.E. 2d 943, 945.

The Ohio Supreme Court has determined that a new trial should be granted only if the defendant is prejudiced by such misconduct. See, e.g., State v. Kehn (1977), 50 Ohio St. 2d 11, 19, 4 O.O. 3d 74, 78, 361 N.E. 2d 1330, 1335, certiorari denied (1977), 434 U.S. 858. A determination of whether the defendant is prejudiced can be made in several ways. For example, the First District Court of Appeals adopted a rebuttable presumption that all jury misconduct is prejudicial. State v. King (1983), 10 Ohio App. 3d 161, 10 OBR 116, 460 N.E. 2d 1143. By adopting this presumption in the case sub judice, we place a burden "on the prosecution to prove that the misconduct was harmless beyond a reasonable doubt." State v. Lacy (Nov. 21, 1986), Huron App. No. H-86-2, unreported, at 7.

This presumption of prejudice was rebutted during the hearing on appellant's motion for new trial. At the hearing, the jurors testified that none of their fellow panel members appeared to be under the influence of alcohol during deliberations. Additionally, as noted by the trial court, the very same jury returned a verdict of not guilty as to one of the four indictments presented for consideration.

During trial, the jury heard the testimony of eight different witnesses and was presented with ample evidence to support a finding of guilt beyond a reasonable doubt. In the absence of such voluminous evidence, the issue of prejudice may turn in the opposite direction.

Therefore, this court finds that the trial court was not in error in determining that appellant was not harmed by the jury's conduct nor was he deprived of a fair trial. For the aforestated reasons appellant's third assignment of error is found not well-taken.

In his fourth assignment of error, appellant asserts that the jury's verdict is against the manifest weight of the evidence. Appellant places particular emphasis on the testimony of the victim, Marie Hammer, surmising that it was neither reliable nor consis-

tent. Appellant asserts that Marie was motivated to fabricate her testimony by her alleged desire to leave the Harts' residence:

"* * * [I]n considering an assignment of error in a criminal case which attacks the sufficiency of the evidence, a certain perspective is required. This court's examination of the record at trial is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " (Citations omitted.) *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 172, 10 O.O. 3d 340, 341, 383 N.E. 2d 132, 134.

Our review of the evidence indicates that it would have been reasonable for the jury to find that Marie Hammer did not distort her testimony regarding appellant's conduct. The testimony indicates that Marie understood the gravity of her accusations and that her perception of the incidents remained accordant throughout the trial.

An evaluation of Marie's testimony, along with the testimony of other witnesses, indicates to this court that a jury could have reasonably concluded that appellant inflicted the harm necessary to constitute a finding of guilty. Accordingly, we find appellant's fourth assignment of error not well-taken.

In his fifth assignment of error, appellant asserts that he was denied the right to a fair trial as a result of ineffective assistance of his privately retained trial counsel. Appellant asserts three specific instances of alleged deficiency in his representation. First, appellant argues that his trial attorney should have requested an *in-camera* inspection of five pre-trial statements made by Marie Hammer. Second, appellant states that the attorney left unanswered a bill of particulars, thereby depriving appellant of an alibi

defense. Finally, appellant focuses on allegedly prejudicial opening statements made by trial counsel.

The Ohio Supreme Court has determined that a claim of ineffective assistance of counsel is to be evaluated by a "two-step process." *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397, 2 O.O. 3d 495, 498, 358 N.E. 2d 623, 627. The *Lytle* court held that initially "* * * there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *Id.*

Additionally, "[o]n the issue of counsel's effectiveness, the appellant has the burden of proof, since in Ohio a properly licensed attorney is presumably competent." *Id.* at 397, 2 O.O. 3d at 498, 358 N.E. 2d at 627.

Taking the incidents complained of individually, we first evaluate the failure of trial counsel to pursue an inspection of the five pre-trial statements. Such a situation parallels the Ohio Supreme Court's ruling in *State* v. *Clayton* (1980), 62 Ohio St. 2d 45, 49, 16 O.O. 3d 35, 37-38, 402 N.E. 2d 1189, 1192, certiorari denied (1980), 449 U.S. 879:

"Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." *Id.*

After extensive cross-examination of Marie elicited numerous points to be considered by the jury, we must surmise that defense counsel made a tactical decision not to pursue an evaluation of her pre-trial statements. As we are limited to the content of the record before us (App. R. 12), we cannot conclusively establish trial counsel's reasons for such strategy; however, an evaluation of other evidence presented

at trial leads us to conclude that such a decision was not in violation of counsel's duties to his client.

It is also noted that "[e]ffective assistance of counsel does not guarantee results. * * *" *State* v. *Longo* (1982), 4 Ohio App. 3d 136, 4 OBR 228, 446 N.E. 2d 1145, paragraph one of the syllabus. A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney.

Second, appellant asserts that his attorney failed to pursue an unanswered request for a bill of particulars, thus depriving appellant of the ability to establish an alibi defense. Appellant's counsel requested a bill of particulars on December 27, 1985. The record indicates that such request was complied with on February 10, 1986, one day before commencement of the trial.

Limited to the contents of the record, we are only able to scrutinize the substance of the bill of particulars itself. Appellant argues that had counsel received the bill of particulars prior to trial, appellant could have called a witness who would have testified that appellant was at work at the time of the incidents. However, since the bill of particulars is dated prior to the start of the trial, we are compelled to assume that it was received by appellant's counsel prior to trial and that counsel deliberately chose not to pursue this particular line of testimony.

Appellant's final contention is that trial counsel inflamed the jury during opening statements to the detriment of appellant. In particular, appellant contends that in referring to the recent child-rape conviction of appellant's brother Daryl Hart, counsel was implying that "my client is not a child molester even though his brother is." Appellant argues that "competent" counsel would never have made such a statement. Appellant suggests that the impact of the statement was so obvious that appellant could not have received a fair trial.

Appellant's claim of ineffective assistance of counsel does not provide this court with *carte blanche* review of the trial tactics employed by counsel. Allowing a court of appeals to second-guess every strategy employed at each phase of a jury trial would bring the process of truth-seeking to a grinding halt. Appellant's counsel appears to have made a determination that such opening statements, in light of pre-trial publicity, would be helpful to his client by distancing him from his brother; whether the same statements would have been made by another attorney is irrelevant.

Appellant's argument that he was prejudiced by these remarks fails on the basis of the outcome of the trial. Appellant was indicted on four counts of gross sexual imposition. He was convicted of three and acquitted of one. If the jury had been genuinely provoked by counsel's statements, it is unlikely that such a distinction would have been made.

For the aforestated reasons, we find appellant's fifth assignment of error not well-taken.

Due to our disposition of the instant cause, all pending motions are found moot and, therefore, not well-taken.

On consideration whereof, this court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. This cause is remanded to said court for execution of sentence. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

CONNORS, HANDWORK and GLASSER, JJ., concur.